**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Denise A Canzoneri,<br><br>        Plaintiff,<br><br>v.<br><br>Prescott Unified School District, et al.,<br><br>        Defendants. | No. CV-20-08033-PCT-SMB<br><br>**ORDER** |

Pending before the Court is Defendants' Motion to Dismiss First Amended Complaint. (Doc. 30.) Plaintiff responded, (Doc. 33), and Defendants replied. (Doc. 34.) Defendants requested oral argument, but the Court declines to hold oral argument, finding that it is unnecessary. *See* LRCiv 7.2(f). Having considered the First Amended Complaint ("FAC"), pleadings, and applicable law, the motion will be granted.

**I.  BACKGROUND**

Plaintiff, Denise Canzoneri, is a former librarian specialist who worked at Prescott United School District ("PUSD") for twenty-two years. Plaintiff brought this suit after being terminated from her position as a librarian for PUSD and for actions taken by PUSD employees during the process of her termination. The allegations in Plaintiff's original Complaint are more fully set forth in the Court's order on Defendants first motion to dismiss. (Doc. 24.) The Court previously dismissed all of Plaintiffs claims pursuant to Rule 12(b)(6) and gave Plaintiff leave to file an amended complaint. The Court now turns to Plaintiff's FAC.

Case 3:20-cv-08033-SMB   Document 36   Filed 09/02/21   Page 2 of 10

Plaintiff's FAC alleges as follows: Plaintiff began working for PUSD in 1996 as a library specialist and a permanent employee. (Doc. 27 ¶ 13.) On March 20, 2019, Plaintiff was told that her position as a high school librarian had been eliminated due to budget cuts. (*Id.* ¶¶ 15, 16.) She was not terminated at this time, and it was expected that another position would be found for her. (*Id*. ¶ 15.) On April 2, 2019, Plaintiff alleges that she publicly offered, at a school board meeting, to create a committee/focus group with the specific intention of addressing the funding shortfall affecting the school library system. (Doc. 27 ¶ 19.) She also addressed the potential misuse of public funds. (Doc. 27 ¶ 19.) The FAC alleges that Plaintiff spoke at the school board meeting as a private citizen who signed in to speak. (Doc. 27 ¶ 19.) Plaintiff alleges that she attended the school board meeting after regular hours, that her job duties did not require her to appear, not did her duties concern funding shortfalls at PUSD. (Doc. 27 ¶¶ 39-40.) Instead, she alleges that she was there as a concerned citizen. (Doc. 27 ¶ 40.)

On April 3, 2019, PUSD gave Plaintiff a letter to her informing her that she was on administrative leave for a potential violation of PUSD policy GBEA. (Doc. 27 ¶ 31.) The letter instructed Plaintiff that while she was on paid administrative leave, she was not to have any contact by any means with any PUSD employees, students, or parents of the district unless allowed to do so by the superintendent or director of HR. (Doc. 27-1 at 12.) The same day, she was given a letter that stated that her employment with PUSD would end on May 24, 2019 – the end of the school year – due to a reduction in the number of staff members because of declining enrollment at the school. (Doc. 27-1 at 39.) On April 15, 2019, Plaintiff received another letter from PUSD which informed her that she violated the GBEA with her actions on April 3, 2019 of soliciting teachers to form a committee. (Doc. 27-1 at 21.) Accordingly, she was directed that, while she was clocked in at PUSD, she was not to discuss the operation of district libraries and she was not to form or attempt to form a committee to discuss library operations. (*Id*.) On the same date, PUSD informed her that she would remain on paid administrative leave the rest of the year. (Doc. 27-1 at 45.)

- 2 -

The FAC alleges claims under 42 U.S.C. § 1983 against PUSD and several individual employees of the school district. The FAC alleges PUSD violated Plaintiff's First Amendment rights by retaliating against her and wrongfully terminating her employment due to PUSD's retaliation and wrongful termination of her employment after she spoke out at the school board meeting.[1]

## II.   LEGAL STANDARD

To survive a Rule 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Rule 8(a)(2). Fed. R. Civ. P. 12(b)(6). Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A complaint that sets forth a cognizable legal theory will survive a motion to dismiss if it contains sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). In ruling on a Rule 12(b)(6) motion to dismiss, the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Facial plausibility only exists if the pleader sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Plausibility does not equal "probability," but requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely

---

[1] Plaintiff also brought an equal protection claim, a liberty interest claim, and a property interest claim. However, she notes in her response to the motion that she is withdrawing, without prejudice, her equal protection claim, her liberty interest claim, and her property interest claim. (Doc. 33 at 2 n.2.)

consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

## III.  DISCUSSION

In their latest Motion to Dismiss, Defendants argue that Plaintiff's FAC still does not state a valid § 1983 claim against PUSD, does not state a valid First Amendment claim, does not state a valid wrongful termination claim, and does not state a valid claim against the individual Defendants. (Doc. 30.)

### A.  § 1983 Claims Against PUSD

"[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). In enacting § 1983, "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Id.* Additionally, §1983 liability may arise against a municipality for acts caused by someone whose acts may be said to represent official policy. *Id.*

#### 1.  GBEA Policy

Defendants first argues that Plaintiff's § 1983 claims against PUSD fail because the claims do not arise from an unconstitutional policy. Defendants argue that the policy complained of, Board Policy GBEA, is not unconstitutional on its face. (Doc. 30 at 2.) Further, Defendants argue that Plaintiff's conclusory references to Board Policy GBEA do not adequately state a constitutional violation necessary to bring a § 1983 claim.[2]

---

[2] Defendants also point out that the GBEA policy on which Plaintiff relies was adopted on October 1, 2019, six months later than March and April 2019 when the conduct at issue took place. (Doc. 27-1 at 27.) However, that argument fails. Policy GBEA is cited by PUSD employees in an April 3, 2019 letter to Plaintiff. (Doc. 27-1 at 12.) Therefore, the policy was clearly in effect at that time.

After examining the allegations in the FAC, the Court finds that Plaintiff has not stated a valid claim for § 1983 liability against PUSD based on the GBEA policy. The FAC alleges that GBEA section E puts a restraint on free speech. (Doc. 27 ¶ 2.) Section E of the GBEA policy states that school employees are to "[d]irect[] any criticism of other staff members or of any department of the school system toward improving the District. Such constructive criticism is to be made directly to the school administrator who has the responsibility for improving the situation." (*Id.*) Plaintiff also notes the end of the policy, which states, "In the performance of duties, employees shall keep in confidence such information as they may secure unless disclosure serves District purposes or is required by law." (*Id.*) The FAC alleges that after Plaintiff spoke at the school board meeting on the evening of April 2, 2019, she received a letter on April 3, 2019 from the PUSD Assistant Superintendent placing her on administrative leave with pay while PUSD determined whether she engaged in unprofessional conduct pursuant to policy GBEA. (*Id.* ¶ 21, 28; Doc. 27-1 at 12.) The letter also directed she should "[n]ot have any contact, whether in person, by telephone, by letter, or otherwise, with any employee of the District, or any student or parent of the District, unless directed or permitted to do so by the Superintendent or by the Director of Human Resources." (Doc. 27-1 at 12.) Plaintiff alleges that this broad prohibition "was so overbroad that it is clearly unconstitutional, infringing on free speech and the right to association." (Doc. 27 ¶ 31.) Additionally, on April 3, 2019, Plaintiff received a letter terminating her position with the school at the end of the school year. Later, Plaintiff received a letter from the Director of Human Resources at PUSD determining that Plaintiff did violate PUSD policy GBEA section E by speaking to other employees at the high school and attempting to form a committee related to the library operations – not for her speech at the school board meeting. (Doc. 27-1 at 21.) As a result, Plaintiff was directed, while she was clocked in, to not discuss the operation of any district libraries and not to form nor attempt to form any type of committee whose purpose is to discuss library operations. (*Id.*)

Defendants argue that Plaintiff has not shown that the GBEA policy itself is

unconstitutional. In *City of Oklahoma City v. Tuttle*, the Supreme Court held that at the very least, "there must be an affirmative link between the policy and the particular constitutional violation alleged." 471 U.S. 808, 823 (1985). The Court explained, "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *Id.* at 824. Where the policy relied on is not itself unconstitutional, "considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the party of the municipality, and the causal connection between the 'policy' and the constitutional deprivation." *Id.*

Defendants argue, "Policy GBEA plainly is not 'unconstitutional' on its face." (Doc. 30 at 2.). Further, Plaintiff, in her response, does not explain how policy GBEA is unconstitutional. (Doc. 33 at 9.) The Court finds that the GBEA policy at issue is not unconstitutional on its face. The policy applies to employees in their "school relationships," and nothing in the policy purports to regulate employee speech outside of their official duties. (Doc. 27-1 at 26.). Absent compelling arguments from either party about how the policy is unconstitutional under existing precedent, the Court cannot find the GBEA policy unconstitutional. This situation, as alleged, appears to be merely a single case where the application of the policy may have led to a potentially unconstitutional result. Further, the restriction of Plaintiff's speech during her administrative leave was not applied pursuant to a PUSD policy, and therefore, PUSD cannot be held liable for that conduct unless it was taken by an official policymaker. (Doc. 27-1 at 21.) Even though Plaintiff claims that the prohibition on her speaking is overbroad and violative of her right to free speech and association, that action was not taken pursuant to a PUSD policy. Therefore, Plaintiff's reliance on the GBEA policy and the prohibition on her association with district employees, students, and parents also does not allow Plaintiff to pursue *Monell* liability against PUSD.

### 2. Final Policymaker

Defendants also argue that Plaintiff's § 1983 *Monell* claim fails because her injuries

were not caused by someone with final policymaking authority. The identity of policymaking officials is a question of state law. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988). Under Arizona law, the governing board of a school district enacts all policies and procedures for schools. A.R.S. § 15-341; *D.G. v. Tucson Unified Sch. Dist.*, No. CV1800583TUCJGZMSA, 2020 WL 7041348, at *6 (D. Ariz. Nov. 30, 2020) (finding that Tucson Unified School District, not the assistant superintendent, was responsible for prescribing and enforcing policies and procedures when determining § 1983 liability); *Long v. Humboldt Unified Sch. Dist. No. 22*, No. CV-09-8045-PHXFJM, 2009 WL 1868561, at *2 (D. Ariz. June 29, 2009) ("Arizona law provides that final policymaking authority for governing schools and disciplining students for disorderly conduct rests with the Governing Board."). Here, the PUSD governing board, not the superintendent or director of HR, was the final policymaker of the school district. Thus, acts of the superintendent and HR director do not constitute PUSD policy for § 1983 liability purposes as the FAC alleges. (Doc. 27 ¶ 48.) The superintendent or director of HR appear to be the parties who imposed the administrative leave restrictions on Plaintiff. As neither is an official policymaker for PUSD, the district cannot be held liable for Plaintiff's claims under *Monell*.

### B. Individual Defendants – Qualified Immunity

Defendants also argue that the FAC does not state a valid claim against the individual Defendants. Specifically, Defendants argue that Plaintiff has not remedied the defects in the allegations against the individual Defendants from her last Complaint which the Court dismissed. (Doc. 24.)

"Public officials are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Brewster v. Bd. of Educ. Of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 977 (9th Cir. 1998) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982), *cert. denied*, 143 L.Ed.2d 349 (1999). Qualified immunity is "quite far-reaching" and safeguards "'all but the plainly incompetent or those who knowingly

violate the law.'" *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092 (1986)). If officers of reasonable competence could disagree on whether a course of conduct is constitutional, immunity should be recognized. *Id.* (citing *Malley*, 475 U.S. at 341.). The Ninth Circuit has stated that "[b]ecause *Pickering*'s analysis as to whether a public employee's expression is constitutionally protected requires a fact-intensive, context-specific balancing of competing interests, 'the law regarding such claims will rarely, if ever, be sufficiently clearly established to preclude qualified immunity under *Harlow* and its progeny.'" *Lytle v. Wondrash*, 182 F.3d 1083, 1088 (9th Cir. 1999) (quoting *Moran v. State of Washington*, 147 F.3d 839, 847 (9th Cir. 1998)) (internal quotation marks omitted). When determining whether a violation alleged was "clearly established" at the time of the alleged violation, federal courts look to controlling law in their circuit for guidance. *Reichle v. Howards*, 566 U.S. 658, 665-66 (2012) (considering Tenth Circuit precedent to determine whether the violation of First Amendment rights was clearly established at the time of the violation); *Sharp v. Cty. of Orange*, 871 F.3d 901, 911 (9th Cir. 2017) ("prior precedent must be 'controlling'—from the Ninth Circuit or Supreme Court—or otherwise be embraced by a 'consensus' of courts outside the relevant jurisdiction.").

Because qualified immunity is "an immunity from suit rather than a mere defense to liability," the Supreme Court has "repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009) (internal quotation marks omitted). Plaintiff's position is that it is premature at this time for the Court to decide what the individual Defendants did or didn't know and that those questions are more appropriate for a jury. (Doc. 33 at 11-12.) Plaintiff's argument is incorrect. The Supreme Court has explained that courts need to determine immunity questions as early as possible in order to immunize officers from suit when necessary.

The Court finds that the individual Defendants are entitled to qualified immunity. In the Court's previous order, the Court found, "Plaintiff's allegations that the individual Defendants knew or should have known that their conduct violated Plaintiff's rights is

conclusory without factual allegations to support the claim. Further, the Court finds that officers of reasonable competence could disagree on whether the facts alleged in the Complaint violated Plaintiff's constitutional rights." (Doc. 24 at 9.) Plaintiff's FAC fares no better. Plaintiff has simply added allegations that the individual Defendants are highly educated and "should possess superior knowledge of the rules governing the District and were assumed to be competent in their jobs and constitutional responsibilities." (Doc. 27 ¶¶ 8-9.) However, Plaintiff has provided no authority, either in her FAC or response, showing why the constitutional violations alleged were clearly established either for the alleged retaliation of her speech or for the prohibition on her speaking to PUSD employees, students, and parents while on administrative leave.[3] Instead, Plaintiff merely points to the five-factor test utilized in the Ninth Circuit to determine the constitutionality of the government's curtailment of government-employee speech and *Pickering*.[4] *Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954, 960-61 (9th Cir. 2011) (citing *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009)). However, as the Ninth Circuit has previously determined, such a complicated balancing of interests will rarely result in a clearly established violation of law. *See Lytle*, 182 F.3d at 1088. Examining the facts of the case, the Court confirms that this case indeed would be a close call under the multifactored test outlined by *Johnson*.

---

[3] The plaintiff bears the burden of showing that the rights allegedly violated were clearly established. *Shafer v. Cty. of Santa Barbara*, 868 F.3d 1110, 1118 (9th Cir. 2017) (citation omitted).

[4] The test is:

> (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech.

*Johnson*, 658 F.3d at 960-61.

Accordingly, the Court finds that the individual Defendants are entitled to qualified immunity and will dismiss the claims against the individual Defendants.[5]

## IV. CONCLUSION

The Court declines to grant leave to file a second amended complaint because amendment would be futile. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc); *Chinatown Neighborhood Ass'n v. Harris*, 794 F.3d 1136, 1147 (9th Cir. 2015) (Reinhardt, J. dissenting). Accordingly,

**IT IS ORDERED** granting Defendants' Motion to Dismiss First Amended Complaint and dismissing Plaintiff's claims with prejudice. (Doc. 30.)

Dated this 2nd day of September, 2021.

_____
Honorable Susan M. Brnovich
United States District Judge

---

[5] Having established that *Monell* liability against PUSD fails and that the individual Defendants are entitled to qualified immunity under the facts alleged, the Court need not analyze the sufficiency of Plaintiff's First Amendment allegations and the wrongful termination claim that goes along with the First Amendment retaliation claim. As the Supreme Court has stated, "In *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009), we held that courts may grant qualified immunity on the ground that a purported right was not 'clearly established' by prior case law, without resolving the often more difficult question of whether the purported right exists at all." *Reichle*, 566 U.S. at 664. "This approach comports with our usual reluctance to decide constitutional questions unnecessarily." *Id.* (citing *Pearson*, 555 U.S. at 241).